Hekry F. Werker, J.
Petitioner, Alvin Richard De Long, filed in this court what he termed a petition for a writ of error coram nobis for the purpose of determining whether the treatment he was receiving in the custody of the Correction Department of the State of New York complied with the purposes of section 2189-a and section 2010 of the former Penal Law under which he was convicted, sentenced and resentenced in accordance with the requirements of People v. Bailey (21 N Y 2d 588).
This court entertained the petition without reference to its form, and directed the Attorney-General to appear in connection with the petition because it involved the Correction Department of the State of New York and the Mental Hygiene Department working in conjunction with Correction. Petitioner was originally convicted of rape in the first degree under section 2010 of the former Penal Law upon a plea of guilty made on April 11, 1966. He was sentenced to a one-day-to-life sentence under section 2189-a. Based upon the decision in People v. Bailey (supra), he subsequently filed a petition for a writ of habeas corpus, which was granted. He was returned to Greene County, examined in accordance with section 2189-a as amplified by the Bailey decision, further examined by an independent psychiatrist at county expense, and a hearing held to determine whether he was a sex deviate and a danger to the community and whether he was susceptible to treatment for purposes of resocialization. As a result, petitioner was resentenced on October 28, 1969 to the one-day-to-life sentence. At the time of sentencing the court directed that he be given the intensive treatment which the psychiatric reports indicated he might respond to. Unfortunately, these directions were not forwarded to the department with the commitment from the Greene County Clerk’s office. The petitioner was received in Clinton Prison in early November, 1969. He was examined by Dr. Hans Corneille, M. D., psychiatrist at Clinton Prison on November 22, 1969. Dr. Corneille in his report was of the opinion ‘1 De Long did not evidence any signs or symptoms calling for psychiatric intervention ’ ’. He was subsequently transferred to Auburn Prison on November 25, 1969. Between November 25, 1969 and September 4, 1970, the date of the first hearing on the petitioner’s new application, he was interviewed only once by Adolf Hug, M. D., the psychiatrist at Auburn to whom he was assigned. That interview took place on August 22, 1970. Dr. Hug, who is working at Auburn on the average of once a week, testified that he was aware of the fact that Mr. De Long was a sex offender. He does not believe that there is any treatment for people like Mr. De Long and no specific course of treatment established in *1001 the Department of Correction or Mental Hygiene for people like the petitioner.
In response to the court’s question as to whether there was any course of treatment known to his particular branch of the science, Dr. Hug replied “ No. There is disagreement about what course of treatment would be the preferable one. I think most agree it would be to have people like Mr. De Long be seen in outpatient clinics supervised on as much as possible a basis, but have him live a community life.”
At the prison, Mr. De Long would see a psychiatrist every few months; he was not in group therapy and the only other therapy he would receive would be through the vocational and study programs operated at that institution.
At an adjourned date, Dr. William Tucker, supervising psychiatrist at Auburn, was produced.
Dr. Tucker’s testimony with respect to intensive care was in conflict with Dr. Hug’s to the extent that Dr. Tucker testified that if the prisoner requested such care, he would receive it. He also stated that it was the understanding of the treatment requirements under section 2189-a that the inmate must request such treatment; otherwise, he would not receive it unless it was recommended by another institution. The course of treatment would depend upon the individual case but facilities were available for such treatment. It is clear that Mr. De Long has received no ‘1 treatment ’ ’ from the time he was resentenced until the time he was brought back to Greene County for the hearing on this, his latest petition.
This certainly was not the ‘ ‘ treatment ’ ’ contemplated by the committee which recommended this legislation to the Governor and the Legislature on March 15,1950. (N. Y. Legis. Doc., 1950, No. 56, p. 44; see People ex rel. Kaganovitch v. Wilkins, 23 A D 2d 178, 182.) The court is not suggesting what course of treatment should be followed with Mr. De Long. It defers to medical expertise in this area. However, three psychiatrists reported and two testified that Mr. De Long was susceptible to treatment before he was resentenced." They also indicated that he was a danger to the community, so that living a community life is not an option open to the court at this time. What this court is recognizing is that Mr. De Long has a right to treatment under the statute under which he was sentenced. As a person who has been sentenced under section 2189-a, this does not mean that he must make application to the psychiatrist for such treatment. The burden is upon the State to provide such treatment. How could it be otherwise in a case like petitioner’s where he is characterized as ‘ ‘ border line intellectual capacity ’ ’ *1002 and “ low normal ”? Is it not the State’s duty to attempt to motivate such an individual? This court is of the opinion that such is the duty of the State. He is not simply to be committed to custodial limbo. If after all attempts to resocialize have been made and failed, then indeed he may have to serve a life sentence. If detention of the legally insane without treatment is constitutionally suspect (Rouse v. Cameron, 373 F. 2d 451; Tribby v. Cameron, 379 F. 2d 104; The Right to Treatment of Those Committed As Criminal Sexual Psychopaths or As Criminally Insane Persons, by Judge Horace W. Gilmore, Cir. Ct., Detroit, Mich., Trial Judges’ Journal, Oct. 1970, vol. 9, No. 4, pp. 84^86), then it is also suspect insofar as a person sentenced as a sexual psychopath is concerned. (People ex rel. Kaganovitch v. Wilkins, supra.)
If the purpose of the statute was simply custodial care, there would be no reason for other than a definite sentence of not more than 20 years. (Penal Law of 1909, § 2010.)
In view of the fact that "the authorities at the Auburn correctional facility were not advised of the previous directions of this court, the petitioner’s prayer for relief is denied. Petitioner is remanded to the custody of the Sheriff of Greene County for the purpose of transporting the petitioner to Auburn correctional facility.
A copy of this decision and the order entered thereon together with copies of the reports of Drs. Smith, Weis and Sullivan shall be forwarded by the District Attorney to the following: The supervising psychiatrist at Auburn, the Superintendent at that facility, the Department of Mental Hygiene and the Department of Correction.