**UNITED STATES of America ex rel. Rawlin GALLOWAY, Petitioner,**

v.

**Hon. Walter J. FOGG, Acting-Superintendent, Green Haven Correctional Facility, Stormville, New York, Respondent.**

**No. 75 Civ. 2949 (MP).**

United States District Court, S. D. New York.

Nov. 5, 1975.

Rawlin Galloway, pro se.

Robert M. Morgenthau, Dist. Atty., New York County, New York City by Robert M. Pitler, and Richard H. Girgenti, New York City.

## OPINION

POLLACK, District Judge.

Petitioner, *pro se* seeks by writ of habeas corpus his release from state custody or, in the alternative, a new trial on the charge of first degree murder on which he was convicted by a jury in state court nearly ten years ago, on December 20, 1965. Petitioner requests an evidentiary hearing on the questions raised in his petition.

The grounds on which relief is sought are petitioner's contentions that his Fifth and Fourteenth Amendment rights were violated in his prosecution. He contends that his Fifth Amendment rights were violated by the introduction into evidence at trial of his confession because when it was extracted he requested and was denied counsel, he was never advised of his rights to remain silent and to have counsel, he was deceived by the police interrogator and he was a borderline mental defective. He contends that his Fourteenth Amendment right to due process was violated because the state court judge, who held a pre-trial hearing on the voluntariness of his confession, had misconceived the purpose and scope of that hearing.

The facts follow.

Petitioner, Rawlin Galloway and another, Harold Bailey, were indicted for murder in New York County in connection with the homicide of Andrew Jackson which had occurred on November 27, 1964. Both defendants pleaded not guilty and asserted the defense of insanity. They were tried before Justice Gerald L. Culkin and a jury in New York Supreme Court. On December 20, 1965 petitioner was found guilty of murder and his co-defendant was acquitted on the grounds of insanity. Petitioner was sentenced to life imprisonment which he presently is serving in the Green Haven Correctional Facility at Stormville, New York. The conviction was affirmed on the facts and the law, without opinion, by an unanimous Appellate Division of the Court. *People v. Galloway*, 28 A.D.2d 823, 282 N.Y.S. 2d 428 (1st Dept. 1967). The New York Court of Appeals affirmed the Appellate Division order, 24 N.Y.2d 935, 301 N.Y.S.2d 994, 249 N.E.2d 771 (1969)[1] and recited in its remittitur (amended) that

> Upon the appeal herein, there were presented and necessarily passed upon questions under the Constitution of the United States, viz: Whether the rights of defendant under the Fifth and Sixth Amendments were denied. 25 N.Y.2d 917, 304 N.Y.S.2d 850, 252 N.E.2d 283 (1969).

> Motion for reargument before the New York Court of Appeals was denied, 25 N.Y.2d 959, 305 N.Y.S.2d 1027, 252 N.E.2d 864 (1969), and the United States Supreme Court denied certiorari, *Galloway v. New York*, 397 U.S. 1000, 90 S.Ct. 1146, 25 L.Ed.2d 410 (1970). The petition now before the Court was filed nearly five years after the judgment became final.

*The pretrial proceedings*

A pre-trial, "Huntley" hearing was held to determine whether the confession

allegedly made by each defendant was voluntary, knowing and intelligent; both defendants were represented by counsel. *See People v. Huntley*, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965). Both defendants testified at this hearing and each denied making any confession when he was interrogated in connection with his alleged confession. At the "Huntley" hearing petitioner asserted that he had requested counsel before he was questioned by police and that they refused his request. The circumstances in the record do not evince such a request or refusal. Plainly the Court did not credit such a request. At the trial the police interrogator, Detective Harold Blabe, was asked if counsel had been requested and he flatly denied that either defendant had requested counsel. In his testimony at the "Huntley" hearing, petitioner admitted that he was not mistreated or threatened by police.

Detective Blabe testified at the "Huntley" hearing that he had interrogated both defendants before they were arrested and that he told Galloway that Galloway's "friends," Bailey and two men who were apparently part of the plan to attack and rob Jackson but who did not participate in the actual attack, had told him the "entire story." He also testified that he told Galloway he had an outside witness.

Justice Culkin terminated the "Huntley" hearing, saying

> . . . inasmuch as the defendant's position is that he did not . . . make any inculpating statement or admissions of any kind—I certainly can't rule that they are voluntary (sic).

However, at the request of petitioner's attorney he deferred decision on the voluntariness issue, pending the receipt from him of psychiatric reports on the petitioner.

---

1. Chief Judge Fuld concurred on the basis of the decision in *People v. McNeil*, 24 N.Y.2d 550, 301 N.Y.S.2d 503, 249 N.E.2d 383 (1969). In *Galloway* the Chief Judge explained that he felt that reversal was indicated by *Bruton v. United States*, 391 U.S.

123, 89 S.Ct. 1620, 20 L.Ed.2d 476 (1968), but that the majority opinion in *McNeil* was binding on him. Issues arising under *Bruton* had been extensively briefed by the parties in *Galloway*.

*The proceedings at trial*

At trial both defendants were represented by counsel and each asserted the defense of insanity. As part of its case, the prosecutor called the two accomplices, Lambert and Johnson, both of whom testified that Galloway had described the attack on Jackson to them. The prosecutor also called a witness who saw two men robbing the badly injured Jackson, but who was unable to identify those men.

Before the prosecutor called Detective Blabe to the stand at the trial, the Judge reconvened the "Huntley" hearing and determined that petitioner's counsel had no further proof to offer on the taking of the confession. The record does not reflect whether he ever received psychiatric reports promised by the defendants. The Judge found that

> After reviewing the testimony in this proceeding, the Court finds that as a matter of law and as a matter of fact that there has not been anything disclosed that would indicate to the Court that the admissions allegedly made by these defendants or any statements that allegedly were taken . . . were induced or coerced in any manner whatsoever.

Detective Blabe then testified to the circumstances and substance of Galloway's confession and admitted telling petitioner a "partial" lie. He also admitted that Galloway had not been informed of his constitutional rights. A stenographer's record of a question and answer session with an Assistant District Attorney, taken shortly after Galloway was interrogated by Blabe, was read to the jury.

The defense called Dr. Hector J. Ritey, a psychiatrist, who expressed the opinion that Galloway never developed to the level of an adolescent of age 12 or 13. According to Dr. Ritey, Galloway was suffering from a hebrephenic form of schizophrenia, which, he explained, was not an arrest of intellectual development, as in the case of feeblemindedness, but an arrest of the development of the personality. The doctor said he was discussing emotional and psychological development, not intellectual development. He disagreed with the report of diagnosis made in a Bellevue Hospital psychiatric examination which labeled Galloway as a personality problem of the pathological personality group, aggressive and anti-social type.

The State's psychiatric expert, Dr. Morris Herman, testified, in response to a hypothetical question concerning Galloway, that no particular manifestations had been described to him indicating any psychiatric disorder, psychotic state or insanity.

The trial judge gave appropriate instructions to the jury at the time of Blabe's testimony concerning its role in determining both the voluntariness and truthfulness of the confession, and these instructions were repeated in the Court's charge to the jury.

On the petition before this Court, the State contends, at the outset, that the petitioner has failed to exhaust or deliberately bypassed available state remedies; however this contention lacks merit herein.

■ In considering a state prisoner's habeas petition, a federal court is barred from passing on any legal claims which the state courts have not had a fair opportunity to consider. *Picard v. Conner*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), or which the petitioner deliberately bypassed, *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *United States ex rel. Schaedel v. Follette*, 447 F.2d 1297 (2d Cir. 1971).

■ The general rule is that the requirement of exhaustion is not met where a petitioner's attack upon the validity of his conviction is rejected by the state court and subsequently, in the federal court, he presents a materially different and stronger evidential case, providing that the state court is still available to the petitioner to pass upon the additional facts offered to the federal court. *United States ex rel. Kessler v. Fay*, 232 F.Supp. 139, 142 (S.D.N.Y.

1964); *United States ex rel. Figueroa v. McMann,* 411 F.2d 915 (2d Cir. 1969).

■ While petitioner's brief before the Court of Appeals leaves some doubt as to which grounds he relied on in making his Fifth Amendment claim, there can be no doubt, given the Court of Appeals' statement upon granting his motion to amend the remittitur, that the state appellate courts considered the broad claim of an alleged coerced confession. The trial court's handling of the confession in the "Huntley" hearing and at trial was thoroughly briefed in the state appeal, and, in his treatment of that issue before the New York Court of Appeals, petitioner noted each ground upon which he now makes his Fifth Amendment argument. In addition, the factual claim he alleges in the petition were all in the record before the Court of Appeals.

Since the factual arguments raised here were all evident on the record before the New York Court of Appeals, and that Court expressly extended its ruling to the Fifth Amendment, and since the statute and case law indicate that there is no presently available state remedy to test petitioner's claim, [N.Y. Crim.Pro.Law § 440.10(2)(a) and (b); *People v. Sullivan,* 3 N.Y.2d 196, 165 N.Y.S.2d 6, 144 N.E.2d 6 (1957); *People v. Hayden,* 68 Misc.2d 1022, 328 N.Y.S. 2d 988, 991 (Sup.Ct. Suffolk County 1972)], the state's contention that there has been a failure to exhaust state remedies is unavailing. The same analysis disposes of the "deliberate bypass" argument.

On the merits of petitioner's contentions:

■ The trial of this case was held prior to the decision in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the requirements of which therefore are not applicable, *Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), although they may be considered on the issue of voluntariness. *Davis v. North Carolina,* 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966). The trial did follow the controlling decisions in *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

In *Frazier v. Cupp,* 394 U.S. 731, 739 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) the Supreme Court ruled that a case falling within the pre-*Miranda* time frame which raised issues involving the voluntariness of a confession must be decided by viewing the "totality of the circumstances" surrounding the taking of that confession. In *Frazier* the Court faced a case in which a police interrogator first falsely told the suspect that an alleged accomplice had confessed, and then sympathetically suggested that the victim had been making homosexual advances toward the suspect. After the second suggestion the suspect spilled his story. The Court held that inasmuch as the petitioner was a mature adult of normal intelligence and had been given some of his constitutional rights, this police deception did not cause the admission of the confession to become error.

■ The fact that the detectives lied to the petitioner to elicit the confession does not by itself render it involuntary as a matter of law. *United States ex rel. Caminito v. Murphy,* 222 F.2d 698, 700–701 (2d Cir. 1955); *United States ex rel. Brandon v. LaVallee,* 391 F.Supp. 1150 (S.D.N.Y.1974). In addition, the absence of warnings of the nature of those required by *Miranda, supra,* does not by itself vitiate the confession as a matter of law. *United States ex rel. Liss v. Mancusi,* 427 F.2d 225 (2d Cir. 1970).

Implicit in Justice Culkin's pre-trial findings is the finding by him that nothing suggested that petitioner's mental condition and capacity tainted the admissions and that the petitioner's statements were not induced or coerced in any manner or by reason of any disability. The testimony of the two accomplices implicating the petitioner in sub-

stantially the same way as stated and acknowledged by the petitioner in his confession made the testimony on the latter's confession cumulative evidence. *See Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972).

Petitioner has not carried the burden on him to establish by convincing evidence that the state court's determination was erroneous, *LaVallee v. Delle Rose,* 410 U.S. 690, 93 S.Ct. 1203, 35 L. Ed.2d 637 (1973), nor has he shown that Justice Culkin's handling of the "Huntley" hearing was unconstitutional by reason of *Jackson v. Denno, supra.*

This petition evinces neither factual nor legal merit and does not warrant a hearing on the issues. *Brandon, supra; LaVallee, supra.*

Petition denied.*

So ordered.

---

* This is the second attempted federal habeas corpus petition. *See United States ex rel. Rawlin Galloway v. Leon J. Vincent,* Civil No. 73–3945 (S.D.N.Y. Nov. 2, 1973), where claims of a *Bruton* question, lack of accomplice corroboration and the sufficiency of trial evidence that petitioner was not insane were rejected as grounds for attack on the conviction. A certificate of probable cause was refused by this Court on petitioner's application in respect to a proposed appeal and the Court of Appeals thereafter on May 31, 1974 denied a certificate of probable cause.